UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

THOMAS E. CONLAN                              Case No. 13-15226-RBR

                                              Chapter 7

     Debtor.
_____/

## EX PARTE MOTION TO EMPLOY DMS, INC. AS AUCTIONEER AND FOR AUTHORITY TO PAY AUCTIONEER

Kenneth Welt, as Chapter 7 Trustee of the Bankruptcy Estate of Thomas E. Conlan (the "Trustee"), through counsel and pursuant to 11 U.S.C. § 327(a) and Local Rules 2014- 1(B) and 6005-1, files this Ex Parte Motion (1) to Employ DMS, Inc. as Auctioneer and (2) for Authority to Pay Auctioneer (the "Motion"), and states as follows:

### I. BACKGROUND

1.    This case commenced with the filing of a voluntary Chapter 7 bankruptcy petition by Thomas E. Conlan (the "Debtor") on March 7, 2013 (the "Petition Date"). Subsequently, Kenneth Welt was appointed as Chapter 7 Trustee.

2.    The Debtor's Schedule "B" lists a Rolex watch and a wedding ring (the "Watch and Ring") with a combined scheduled value of $6,100.00. The Trustee asserts that the Watch and Ring are undervalued.

3.    The Trustee is in possession of the Watch and Ring.

4.    Subsequently, the Debtor turned over the Watch and Ring and they are currently being stored for the Trustee by the Auctioneer.

## II. MOTION TO EMPLOY DMS, INC.

5. This Court has the power to authorize said employment pursuant to 11 U.S.C. §327(a) which provides, in pertinent part, the "… the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."

6. The Trustee believes that the highest and best value for the Watch and Ring will be generated through a sale conducted by a professional auctioneer, and that it is in the best interest of the Estate to employ the Auctioneer to sell the Watch and Ring through an Ebay online auction sale (the "Ebay Auction"). Accordingly, the Trustee seeks authority to employ the Auctioneer, and to pay the Auctioneer an expense reimbursement not to exceed $250.00, plus ten percent (10%) of the gross revenue of the sale of the Watch and Ring, and any additional reasonable expenses incurred to preserve the value of the Watch and Ring.

7. The Trustee believes that the Auctioneer is disinterested as defined in the Bankruptcy Code, as reflected by the Affidavit of Auctioneer attached hereto as Exhibit "A" and incorporated by reference.

8. The Auctioneer is licensed, bonded, and insured as an auctioneer and is authorized to conduct auctions in the State of Florida pursuant to Florida Statutes § 468.381 et seq. In addition, the Auctioneer has posted a blanket surety bond in the amount of $50,000.00, which is an amount greater than the revenues expected to be generated by the auction of the Watch and Ring. The Bond is issued by a federally approved surety company. A true and correct copy of the Bond and other documents are attached as Composite Exhibit "B" and incorporated by reference.

### III. MOTION FOR AUTHORITY TO PAY AUCTIONEER

9. As stated above, DMS, Inc. will be paid $250.00 plus ten percent (10%) of the gross proceeds from the sale of the Watch and Ring, and any additional reasonable expenses incurred to preserve the value of the Watch and Ring. The Trustee seeks authority to pay the expense reimbursement from the proceeds of the auction, without further Order of the Court.

10. Upon completion of the auction, the Auctioneer will file a report summarizing the results of the auction and stating the total fee to be paid to the Auctioneer in accordance with the Order approving this Motion. The report shall be served on all interested parties. The fees will be paid without the necessity of further notice or hearing unless any party in interest files an objection within ten (10) days from the date of filing of the report.

11. The Trustee requests the Court enter an order approving this Motion without a hearing based on the ordinary course nature of the employment and in order to minimize the costs to the Estate.

12. The Trustee will serve copies of the Order granting this Motion together with the Notice of Auction as required by Rules 6004, 2002(a)(1), and 2002(a)(2) of the Federal Rules of Bankruptcy Procedure, and Local Rule 6005-1(E).

WHEREFORE, Kenneth Welt, as Chapter 7 Trustee of the Bankruptcy Estate of Thomas E. Conlan, respectfully requests this Honorable Court enter an Order (1) granting the instant Motion, (2) authorizing the Trustee to employ DMS, Inc. as an auctioneer upon the terms and conditions stated herein; (3) authorizing the Trustee to pay DMS, Inc. on the terms and conditions set forth herein; and (4) granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

**MARSHALL SOCARRAS GRANT, P.L.**
Attorneys for the Trustee
197 South Federal Highway, Suite 300
Boca Raton, Florida  33432
Telephone No. 561.361.1000
Facsimile No. 561.672.7581
Email:  lpecan@msglaw.com


By:   /s/ Lawrence E. Pecan
         LAWRENCE E. PECAN
         Florida Bar No. 99086

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

In re:

THOMAS E. CONLAN                                      Case No. 13-15226-RBR

                                                                                                   Chapter 7

      Debtor.
_____/

## AFFIDAVIT OF AUCTIONEER

STATE OF FLORIDA     )
                               )
COUNTY OF BROWARD  )

      BEFORE ME, the undersigned authority, this date personally appeared Gerardo Fuentes who being first duly sworn under oath, deposes and states:

      1.     That I am an officer of DMS, Inc., and am authorized to make this declaration on behalf of the corporation in accordance with Rule 2014 Fed R. Bankr.P and in compliance with Administrative Order 92-5.

      2.     That neither I, nor DMS, Inc., nor any of its officers or directors have any connection to the Debtor, the Debtor's estate, Trustee, Kenneth Welt ("Trustee"), or the U.S. Trustee, and that same are disinterested persons within the meaning of 11 U.S.C. Section 327(a).

      3.     That DMS, Inc. is duly licensed, covered by the Florida Auctioneer Recovery Fund, bonded as an auctioneer and is authorized to conduct auctions in the State of Florida pursuant to Florida Statutes Section 468.381 et seq. True copies of said license and bond are attached hereto.

      4.     That in addition to the foregoing, I have attached hereto a copy of an annual blanket bond in the amount of $50,000.00 (fifty thousand dollars, which is an amount greater

                                                                                                                                                                        EXHIBIT A

than revenues expected to be generated by the auction of the property. The bonds are issued by a federally approved surety company and in favor of the United States of America:

5. That I have read the Motion of the Trustee regarding the retention and compensation of DMS, Inc. and agree to be bound by the terms and conditions represented herein.

6. That property subject to this proposed auction will not be sold together with any non-bankruptcy property.

7. That I further understand that the Court, in its discretion, may alter he terms and conditions of employment and compensation as it deems appropriate.

FURTHER AFFIANT SAYETH NAGHT.

Gerardo Fuentes

THE FOREGOING INSTRUMENT was acknowledged before me on this __10__ day of __October__, 2013.

Notary Public, State of Florida

My Commission expires:



Notary Public State of Florida
Carina Avila
My Commission FF 003559
Expires 05/28/2017



# Western Surety Company

## DISHONESTY BOND
(FOR ANY TYPE OF BUSINESS)

Bond No. 61158326

In consideration of the agreed premium, Western Surety Company, a South Dakota corporation (the "Surety"), hereby agrees to indemnify Document Management Solutions, Inc.
4980 Sw 52nd Street, Bay 108, Davie, FL 33314
(the "Insured"), against any loss of money or other property which the Insured shall sustain or for which the Insured shall incur liability to any Customer or Subscriber of the Insured through any fraudulent or dishonest act or acts committed by any Employee or Employees of the Insured acting alone or in Collusion with others, the amount of indemnity on each of such Employees being Fifty Thousand and 00/100
DOLLARS ( $50,000.00 ).

THE FOREGOING AGREEMENT IS SUBJECT TO THE FOLLOWING CONDITIONS AND LIMITATIONS:

**TERM OF BOND:**
SECTION 1. The term of this bond begins with the 1st day of September, 2011, standard time, at the address of the Insured above given, and ends at 12:00 o'clock night, standard time, on the effective date of the cancellation of this bond in its entirety.

**EXCLUSION:**
SECTION 2. This bond does not apply to loss, or to that part of any loss, as the case may be, the proof of which, either as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation. In addition, the policy does not apply to the defense of any legal proceedings brought against the Insured, or to fees, costs or expenses incurred or paid by the Insured in prosecuting or defending any legal proceedings whether or not such proceedings results or would result in a loss to the Insured covered by this policy. In addition, the Company shall not be liable for any costs, fees and other expenses incurred by the Insured in establishing the existence or the amount of loss covered under this policy.

**DISCOVERY PERIOD:**
SECTION 3. Loss is covered under this bond only (a) if sustained through any act or acts committed by any Employee of Insured while this bond is in force as to such Employee, and (b) if discovered prior to the expiration or sooner cancellation of this bond in its entirety as provided in Section 10, or from its cancellation or termination in its entirety in any other manner, whichever shall first happen.

**DEFINITION OF EMPLOYEE:**
SECTION 4. The word Employee or Employees, as used in this bond, shall be deemed to mean, respectively, one or more of the natural persons (except directors or trustees of the Insured, if a corporation, who are not also officers or employees thereof in some other capacity) while in the regular service of the Insured in the ordinary course of the Insured's business during the term of this bond, and whom the Insured compensates by salary or wages and has the right to govern and direct in the performance of such service, and who are engaged in such service within any of the States of the United States of America, or within the District of Columbia, Puerto Rico, the Virgin Islands, or elsewhere for a limited period, but not to mean brokers, factors, commission merchants, consignees, contractors, or other agents or representatives of the same general character.

**FRAUDULENT OR DISHONEST ACT:**
SECTION 5. A FRAUDULENT OR DISHONEST ACT OF AN EMPLOYEE OF THE INSURED SHALL MEAN AN ACT WHICH IS PUNISHABLE UNDER THE CRIMINAL CODE IN THE JURISDICTION WITHIN WHICH ACT OCCURRED, FOR WHICH SAID EMPLOYEE IS TRIED AND CONVICTED BY A COURT OF PROPER JURISDICTION.

**MERGER OR CONSOLIDATION:**
SECTION 6. If any natural persons shall be taken into the regular service of the Insured through merger or consolidation with some other concern, the Insured shall give the Surety written notice thereof and shall pay an additional premium on any increase in the number of Employees covered under this bond as a result of such merger or consolidation computed pro rata from the date of such merger or consolidation to the end of the current premium period.

**NON-ACCUMULATION OF LIABILITY:**
SECTION 7. Regardless of the number of years this bond shall continue in force and the number of premiums which shall be payable or paid, the liability of the Surety under this bond shall not be cumulative in amounts from year to year or from period to period.

Form 1432-10-2002

EXHIBIT B

LIMIT OF LIABILITY UNDER THIS BOND AND PRIOR INSURANCE:
SECTION 8. With respect to loss or losses caused by an Employee or which are chargeable to such Employee as provided in Section 5 and which occur partly under this bond and partly under other bonds or policies issued by the Surety to the Insured or to any predecessor in interest of the Insured and terminated or cancelled or allowed to expire and in which the period for discovery has not expired at the time any such loss or losses thereunder are discovered, the total liability of the Surety under this bond and under such other bonds or policies shall not exceed, in the aggregate, the amount carried under this bond on such loss or losses or the amount available to the Insured under such other bonds or policies, as limited by the terms and conditions thereof, for any such loss or losses, if the latter amount be the larger.

SALVAGE:
SECTION 9. If the Insured shall sustain any loss or losses covered by this bond which exceed the amount of coverage provided by this bond, the Insured shall be entitled to all recoveries, except from suretyship, insurance, reinsurance, security or indemnity taken by or for the benefit of the Surety, by whomsoever made, on account of such loss or losses under this bond until fully reimbursed, less the actual cost of effecting the same; and less the amount of the deductible carried on the Employee causing such loss or losses; and any remainder shall be applied to the reimbursement of the Surety.

CANCELLATION AS TO ANY EMPLOYEE:
SECTION 10. This bond shall be deemed cancelled as to any Employee: (a) immediately upon discovery by the Insured, or by any partner or officer thereof not in collusion with such Employee, of any fraudulent or dishonest act on the part of such Employee; or (b) at 12:00 o'clock night, standard time, upon the effective date specified in a written notice served upon the Insured or sent by mail. Such date, if the notice be served, shall be not less than ten days after such service, or, if sent by mail, not less than fifteen days after the date of mailing. The mailing by Surety of notice, as aforesaid, to the Insured at its principal office shall be sufficient proof of notice.

CANCELLATION AS TO BOND IN ITS ENTIRETY:
SECTION 11. This bond shall be deemed cancelled in its entirety at 12:00 o'clock night, standard time, upon the effective date specified in a written notice served by the Insured upon the Surety or by the Surety upon the Insured, or sent by mail. Such date, if served by the Surety, shall be not less than ten days after such service, or if sent by the Surety by mail, not less than fifteen days after the date of mailing. The mailing by the Surety of notice, as aforesaid, to the Insured at its principal office shall be sufficient proof of notice. The Surety shall refund to the Insured the unearned premium computed pro rata if this bond be cancelled at the instance of the Surety, or at short rates if cancelled or reduced at the instance of the Insured.

PRIOR FRAUD, DISHONESTY OR CANCELLATION:
SECTION 12. No Employee, to the best of the knowledge of the Insured, or of any partner or officer thereof not in collusion with such Employee, has committed any fraudulent or dishonest act in the service of the Insured or otherwise. If prior to the issuance of this bond, any fidelity insurance in favor of the Insured or any predecessor in interest of the Insured and covering one or more of the Insured's Employees shall have been cancelled as to any of such Employees by reason of (a) the discovery of any fraudulent or dishonest act on the part of such Employees, or (b) the giving of written notice of cancellation by the insurer issuing said fidelity insurance, whether the Surety or not, and if such Employees shall not have been reinstated under the coverage of said fidelity insurance or superseding fidelity insurance, the Surety shall not be liable under this bond on account of such Employees unless the Surety shall agree in writing to include such Employees within the coverage of this bond.

LOSS—NOTICE—PROOF—LEGAL PROCEEDINGS:
SECTION 13. At the earliest practical moment, and at all events not later than fifteen days after discovery of any fraudulent or dishonest act on the part of any Employee by the Insured, or by any partner or officer thereof not in collusion with such Employee, the Insured shall give the Surety written notice thereof and within four months after such discovery shall file with the Surety affirmative proof of loss, itemized and duly sworn to, and shall upon request of the Surety render every assistance, not pecuniary, to facilitate the investigation and adjustment of any loss. No suit to recover on account of loss under this bond shall be brought before the expiration of two months from the filing of proof as aforesaid on account of such loss, nor after the expiration of fifteen months from the discovery as aforesaid of the fraudulent or dishonest act causing such loss. If any limitation in this bond for giving notice, filing claim or bringing suit is prohibited or made void by any law controlling the construction of this bond, such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

PART-TIME OR TEMPORARY EMPLOYEES:
SECTION 14. The named Insured shall not at any time while this bond is in force direct any temporary or part-time Employee(s) to any subscriber's premises unless such Employee(s) is accompanied by a foreman who is in the regular employ of the Insured.

SIGNED, SEALED AND DATED  September 20th , 2011 .

By _____  
Appointed Agent of Surety

WESTERN SURETY COMPANY  
By _____  
PAUL T. BRUFLAT, SENIOR VICE PRESIDENT